Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  blarsen@shea.law
        kwyant@shea.law

*Attorneys for Creditor Aliya Growth Fund, LLC – Series X*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br>ROBIN LINUS LEHNER and<br>DONYA TINA LEHNER<br><br>Debtors. | Chapter 7<br><br>Case No.: 22-14616-nmc |
| ALIYA GROWTH FUND, LLC – SERIES X,<br>Plaintiff,<br>v.<br>ROBIN LINUS LEHNER,<br>Defendant. | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2) AND 523(a)(6)** |

Plaintiff Aliya Growth Fund, LLC – Series X ("AGF"), by and through its undersigned counsel, hereby alleges for its Complaint to Determine Non-Dischargeability of Debt Pursuant to

Page 1 of 14

11 U.S.C. §§ 523(a)(2) and 523(a)(6) (the "Complaint") against Defendant Robin Linus Lehner ("Debtor" or "Defendant") as follows:

## I. JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to 11 U.S.C. § 523(a) to determine the nondischargeability of a debt owed by Debtor to AGF. This adversary proceeding is commenced pursuant to Rules 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This Court has jurisdiction to hear this adversary proceeding as a core proceeding under 28 U.S.C. §§ 157(b)(2)(I)-(J) and 1334(a)-(b).

3. On or about December 30, 2022 (the "Petition Date"), Debtor filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada, initiating Case No. 22-14616-nmc (the "Bankruptcy Case").

4. This judicial district is the proper venue for this adversary proceeding under 28 U.S.C. § 1409(a), as this adversary proceeding arises under, and is in connection with, the Bankruptcy Case, which is currently pending before this Court in this judicial district.

## II. THE PARTIES

5. AGF is a creditor and party-in-interest in the above-captioned Bankruptcy Case and is a limited liability company organized under the laws of the State of Florida with its principal place of business located in the State of Florida.

6. Upon information and belief, Debtor is, and at all relevant times has been, an individual resident of the State of Nevada.

## III. BACKGROUND OF THE CASE

**A. AGF's loan to Defendant**

7. In or around November 2020, South River Capital, LLC ("South River") made a loan in the amount of at least $2,787,000 to Defendant (the "South River Loan"), which was secured by real property located at 9501 Balatta Canyon Ct., Las Vegas, Nevada 89144.

8. In or around May 2021, RMSPC Funding, LLC ("RMSPC") made a loan in the amount of at least $6,844,000 to Defendant (the "RMSPC Loan"), which was secured by certain

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  real property and substantially all personal property owned by Defendant (the "RMSPC
2  Collateral"). Specifically, the RMSPC Loan was secured by, among other things, a lien on real
3  property located at 9501 Balatta Canyon Ct., Las Vegas, Nevada 89144, real property located at
4  42055 Dawn Road, Plato, Missouri 65552, all receivables in and to SolarCode Holdings, LLC,
5  Defendant's interest in and to RL Exotics, LLC, and Defendant's National Hockey League player
6  contract.

7      9.    A UCC-1 was filed on behalf of RMSPC evidencing its security interest in the
8  RMSPC Collateral with the office of the Secretary of State for the State of Nevada as evidenced
9  by Filing No. 2021171669-6.

10     10.   In 2022, Defendant approached AGF seeking a loan, in part, to pay off the existing
11 South River Loan and RMSPC Loan.

12     11.   As of November 16, 2022, Defendant owed approximately $6,844,000 in
13 connection with the RMSPC Loan and related loan documents and $2,787,000 in connection with
14 the South River Loan and related loan documents.

15     12.   On November 16, 2022, AGF made a loan to Defendant in the amount of
16 $4,800,000 (the "AGF Loan") as evidenced by a Promissory Note dated November 16, 2022 (the
17 "AGF Note").

18     13.   On November 16, 2022 and in connection with and as security for the AGF Loan,
19 Defendant executed a Loan and Security Agreement (the "Security Agreement") whereby
20 Defendant granted AGF a security interest in certain real property and substantially all existing
21 and after-acquired personal property, including but not limited to, Defendant's accounts, notes,
22 documents, instruments, general intangibles, contracts, chattel paper, investment property, deposit
23 accounts, and Defendant's current and future earnings under his player contract with the National
24 Hockey League.

25     14.   Defendant used $3,794,457 in proceeds of the AGF Loan to pay down the RMSPC
26 Loan and $650,000 in such proceeds to pay down the South River Loan. Defendant also used
27 proceeds of the AGF Loan to pay various origination fees and underwriting fees incurred in

connection with the origination of the AGF Loan. Additional proceeds in the amount of $28,885 were disbursed directly to Defendant.

### B. Defendant's Misrepresentations to AGF

15. To induce AGF to make the AGF Loan, Defendant made several material representations to AGF, which have since been determined to be false and fraudulent.

16. In Section 20 of the AGF Note, Defendant represented to AGF as follows:

> (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture; and (iii) in the event Borrower does have other obligations to make payments to a third party pursuant to any written instrument, Borrower has fully informed Lender of same, in addition to any liens placed on Borrower's property pursuant to such obligations, via the "**Other Current Liabilities / Liens of Borrower**" document attached hereto as **Exhibit C** [to the AGF Note].

17. Defendant also executed a notarized affidavit on November 16, 2022, whereby Defendant solemnly swore and affirmed that he had not incurred any debt or liability that was not disclosed to AGF through the various documents executed in connection with the AGF Loan and had not guaranteed or otherwise, directly or indirectly, assumed or accepted responsibility for any financial obligation of any third party.

18. Exhibit C to the AGF Note identified only the South River Loan, the RMSPC Loan, and a loan from the Bank of Ozarks. Defendant did not disclose any other outstanding indebtedness for which he was personally liable or otherwise obligated to repay or for which he had pledged his assets as collateral.

19. AGF reasonably relied upon such representations by Defendant in making the AGF Loan to Defendant.

20. Unbeknownst to AGF and prior to the execution of the AGF Loan documents by Defendant, Defendant was indebted to several additional undisclosed creditors, either directly or by guarantees of payment, including, but not limited to:

a. Guaranteed financing and promissory note in the amount of $1,000,000 from DMC Financing, LLC to SolarCode Holdings, LLC or a subsidiary thereof (collectively, "SolarCode");

b. Guaranteed financing and promissory note in the amount of $700,000 from Jackson Lending, LP to SolarCode;

c. Debt incurred relating to a promissory note between Anne Meade and SolarCode for $448,000;

d. Guaranteed financing and promissory note in the amount of $895,000 from Bredan, LLC to SolarCode;

e. Guaranteed financing and promissory note in the amount of $753,500 from C6 Capital Funding, LLC to SolarCode;

f. Debt incurred relating to a promissory note with David Schlee for $200,000;

g. Guaranteed credit facility for Milos Andric, as borrower, and Deutsche Bank Luxembourg S.A., as lender, for $2,800,000;

h. Debt incurred relating to a promissory note with Digital Asset Redemption, LLC for $100,000;

i. Debt incurred relating to a promissory note with Dr. Mehmet Erk for $200,000;

j. Debt incurred relating to a promissory note between Dr. Michael Parentis and SolarCode for $380,000;

k. Debt incurred relating to a promissory note with Dr. Michael Vasquez for $100,000;

l. Co-obligor on promissory note with Eclipse Service, Inc. for $3,915,000;

m. Debt incurred relating to loan from Frank C. Muggia for $350,000;

n. Debt incurred relating to Gerald M. Thompson and SolarCode for $300,000;

o. Debt incurred relating to James Kirchmeyer and RL Solar, LLC for $1,500,000;

|   |   |   |
|---|---|---|
| p. | | Debt incurred relating to a promissory note and purchase and sale agreement with JHB Collective, LLC for $887,500; |
| q. | | Debt incurred regarding promissory note with Marc Rosenthal for $475,000; |
| r. | | Debt incurred relating to a promissory note relating to Merle Whitehead and RL Solar, LLC for $1,500,000; |
| s. | | Debt incurred relating to a promissory note with Metro Park for $500,000; |
| t. | | Debt incurred with Miland Holdings, LLC for $27,400; |
| u. | | Debt incurred with Paypal Business Loan c/o Swift Financing, LLC for $24,339; |
| v. | | Debt incurred relating to a promissory note with Richard Hamister for $50,000; |
| w. | | Debt incurred relating to a promissory note with Michael Borden for $526,027; and, |
| x. | | Debt incurred relating to a loan agreement with Michael Borden for $3,636,093. |

21. Defendant failed to disclose the foregoing debts and liabilities, which total over $21,000,000, to AGF in requesting and entering into the AGF Loan.

22. Defendant was aware of the foregoing debts and liabilities at the time he executed the AGF Loan documents as he had personally signed documents relating to such debts and liabilities.

23. Had Defendant disclosed these outstanding debts and liabilities, AGF would not have made the AGF Loan to Defendant.

24. Defendant did not disclose to AGF any pending litigation, judgement, claim or other proceeding pending against him through Exhibit C to the AGF Note or otherwise.

25. However, AGF has since discovered that Defendant is a defendant or judgment debtor in the following litigation matters, among possible others, all of which were pending before Defendant executed the AGF Loan documents:

    a. *JHB Collective LLC v. Lehner, Robin*, Florida Palm Beach Court System, Case No. 50-2022-CA-009122;

    b. *Eclipse Service Inc. v. Solarcode LLC et al.*, U.S. District Court for the Eastern District of Wisconsin, Case No. 2:22-cv-00757;

    c. *Mats Nilsson et al vs. Ecoboost USA, LLC et al*, Maricopa County Superior Court, Case No. CV2020055511;

    d. *Taurus, LLC v. Robin Lehner*, Nevada State Court, Case Nos. A-22-857052-C, A-22-857059-C, A-22-857057-C, and A-220-857054-C;

    e. *Taurus II, LLC v. Robin Lehner*, Nevada State Court, Case Nos. A-22-857063-C and A-22-857061-C;

    f. *Commercial Capital BIDCO, Inc. v. Council for the Spanish Speaking, Inc. et al.*, Milwaukee County Courts, Case No. 2022CV0005276;

    g. *Eclipse Service Inc. v. Solarcode, LLC et al.*, Milwaukee County Courts, Case No. 2022CV003016;

    h. *Carey Hedstrom et al. v. Michael Lehner et al.,* Maricopa County Superior Court, Case No. CV2021005251;

    i. *Taurus VII, LLC v. Robin Lehner*, Nevada State Court, Case No. A-22-857065-C;

    j. *Deutsche Bank Luxembourg, S.A. v. Robin Lehner*, Index No. 655899/2021, Supreme Court of New York, Commercial Division; and

    k. A Swedish insolvency proceeding in which default was entered against Defendant (case number and name unknown);

26. Defendant has acknowledged that he is a party to the foregoing proceedings by way of his Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case.

27. Defendant also made additional material misrepresentations in Section IV of the AGF Note to induce AGF to provide the AGF Loan, which included, but was not limited to, another representation regarding there being no pending litigation involving Defendant or the collateral for the AGF Loan or any other assets of Defendant.

28. At Section 13 of the AGF Note, Defendant acknowledged that each and every representation, warranty, covenant, and agreement set forth in the AGF Note is fundamental and material to the Agreement and was relied upon by AGF as a material inducement to make the AGF Loan.

29. Defendant made several similar material misrepresentations in entering into the Security Agreement.

30. As set forth in Section IV [Representations and Warranties] (d) of the Security Agreement, Defendant represented and warranted to AGF as follows:

> There is no pending proceeding, action, litigation, claim, investigation or allegation, including, without limitation, any bankruptcy, insolvency, or similar proceeding, involving Borrower, the Collateral and/or any of Borrower's other assets, and to the best of Borrower's knowledge, no such proceeding, action, litigation, claim, investigation or allegation has been threatened against Borrower or any of the Collateral by any person, entity, or before any court of governmental authority, agency, or arbitration authority.

31. This representation and warranty was materially false at the time it was made by Defendant, who knew this representation and warranty to be false because, among other things, he had been personally served with various complaints and other documents relating to the litigation matters identified above and in Defendant's Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case.

32. As set forth in Exhibit C to the Security Agreement, Defendant agreed to grant AGF a first position lien against Defendant's National Hockey League player contract, among other things, as part of the Collateral for the AGF Loan.

33. As set forth in Section IV [Representations and Warranties] (e) of the Security Agreement, Defendant represented and warranted to AGF as follows:

> There is no agreement or other document, or other duties, responsibilities, or

obligations, binding on Borrower or that would affect Borrower's rights, assets, or properties (or the Collateral) in a manner that would conflict with or any way prevent the execution, delivery, or carrying out of the terms of this Agreement and the other Loan Documents by Borrower.

34.     This representation and warranty was materially false at the time it was made by Defendant, who knew this representation and warranty to be false because, among other things, he had previously granted RMSPC a first position security interest in his National Hockey League player contract as part of the collateral for the RMSPC Loan, which was only partially repaid through the AGF Loan and remained outstanding and secured by, among other things, a first position security interest in Defendant's National Hockey League player contract.

35.     As set forth in Section IV [Representations and Warranties] (f) of the Security Agreement, Defendant represented and warranted to AGF as follows:

> Borrower owns all rights, title and interest in and to the Collateral, including, but not limited to, the Player Contract, free and clear of any and all liens, claims, judgments, encumbrances and options (except for the liens and security interests created in favor of Lender under this Agreement and the other Loan Documents), and Borrower is entitled to all of the benefits afforded to it in and to the Player Contracts, including but not limited to any and all payments to be made to Borrower thereunder and Borrower further acknowledges that Borrower is hereby granting a perfected security interest in and to payments to be received by Borrower under the Player Contracts in order to satisfy Borrower's payment of Obligations on the terms as set forth in this Agreement.

36.     This representation and warranty was materially false at the time it was made by Defendant, who knew this representation and warranty to be false because, among other things, he had previously granted RMSPC a first position security interest in his National Hockey League player contract as part of the collateral for the RMSPC Loan, which was only partially repaid through the AGF Loan and remained outstanding and secured by, among other things, a first position security interest in Defendant's National Hockey League player contract.

37.     As set forth in Section IV [Representations and Warranties] (g) of the Security Agreement, Defendant represented and warranted to AGF that "All taxes and assessments of any nature due and payable by Borrower have been paid, and Borrower has filed all tax returns that Borrower is required to file."

38.     This representation and warranty was materially false at the time it was made by

Defendant, who knew this representation and warranty to be false because, among other things, he had failed to pay previously accrued taxes due and owing to (i) the Missouri Department of Revenue as evidenced by Claim 2-1 filed in the Bankruptcy Case, (ii) the New Jersey Division of Taxation as evidenced by Claim 12-1 filed in the Bankruptcy Case, and (iii) the Massachusetts Department of Revenue as evidenced by Claim 23-1 filed in the Bankruptcy Case.

39. As set forth in Section IV [Representations and Warranties] (n) of the Security Agreement, Defendant represented and warranted to AGF that "Borrower is not in default of any material obligation contained in any other instrument or agreement."

40. This representation and warranty was materially false at the time it was made by Defendant, who knew this representation and warranty to be false because, among other things, Defendant was in material default of his obligations under the RMSPC Loan and various other agreements relating to the litigation matters identified above and in Defendant's Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case, which he failed to disclose to AGF in requesting and entering into the AGF Loan.

41. As set forth in Section VI [Default] 13 [Material Inducement] of the Security Agreement, Defendant acknowledged that AGF relied upon the representations and warranties made by Defendant through the Security Agreement and related documents in entering into and making the AGF Loan to Defendant. Specifically, this section of the Security Agreement states:

> Each representation, warranty, covenant, and agreement by Borrower set forth in this Agreement is fundamental and material to this Agreement, and has been specially negotiated and relied upon by Lender as a material inducement to make the Loan and consummate the other transactions contemplated by this Agreement and the other Loan Documents. All such representations, warranties, covenants, and agreements shall be strictly construed such that anything less than full, complete and strict truthfulness, accuracy, completeness, and compliance therewith shall be considered a material breach, notwithstanding any lack of knowledge, control or culpability on the part of Borrower and without regard to any mitigating factors. Under no circumstances shall Borrower be entitled to receive any notice of, or opportunity to cure, any breach of this Agreement, except as otherwise provided by Lender in Lender's sole discretion, it being understood that the occurrence of such breach shall constitute an immediate Event of Default under this Agreement.

42. AGF relied upon Defendant's representations and warranties as set forth in the Security Agreement and would not have made the AGF loan to Defendant had it known that such

representations and warranties were false.

**C. Defendant Files for Bankruptcy**

43. Approximately three weeks after obtaining the AGF Loan and making the foregoing material misrepresentations to AGF, Defendant engaged bankruptcy counsel and began preparing to file his voluntary chapter 7 bankruptcy petition.

44. Approximately six weeks after obtaining the AGF Loan and making the foregoing material misrepresentations to AGF, Defendant filed his voluntary chapter 7 bankruptcy petition on December 30, 2022 thereby initiating the Bankruptcy Case.

45. As of the filing of the Bankruptcy Case, Defendant owed $4,679,259 in principal to AGF, exclusive of interest, costs, fees, and other amounts due in connection with the AGF Loan.

## FIRST CAUSE OF ACTION

**(Exception to Discharge for Imputations of Actual Fraud – 11 U.S.C. § 523(a)(2)(A))**

46. AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

47. Under section 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition."

48. As described in detail above, Defendant solicited and received significant sums of money from AGF through the AGF Loan by making materially false and misleading representations regarding outstanding lawsuits and judgments against Defendant, Defendant's assets, Defendant's performance of obligations owed to other parties, and Defendant's intent and ability to repay the AGF Loan.

49. The above representations were false when made by Defendant, who knew such representations to be false when made.

50. Defendant, through false pretenses and fraud, acted to induce AGF to enter into the AGF Loan where Defendant had no intention or reasonable expectation of repaying the AGF Loan

and, in fact, knew that he would be unable to repay the AGF Loan due to the various preexisting debts and claims against him that he failed to disclose to AGF.

51. In the absence of Defendant's false pretenses, false representations, and actual fraud, AGF would not have entered into the AGF Loan transaction described above.

52. At the time AGF entered into the above-referenced transactions, AGF did not know that the foregoing representations by Defendant were false.

53. AGF's reliance on Defendant's false representations was justified and reasonable.

54. AGF has sustained damages as a result of Defendant's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

55. Based on the fraudulent actions of Defendant, punitive damages are appropriate to the maximum amount allowed under applicable laws.

56. AGF is entitled to a judgment against Defendant stating that all amounts owed to AGF by Defendant be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

57. As a result of Defendant's foregoing actions, AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

## SECOND CAUSE OF ACTION

### (Exception to Discharge – 11 U.S.C. § 523(a)(2)(B))

58. AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

59. As described in detail above, Defendant solicited and received significant sums of money from AGF through the AGF Loan by making false and misleading written statements to AGF upon which AGF reasonably relied in making the AGF Loan to Defendant.

60. As described in detail above, such materially false and misleading written statements related to, among other things, outstanding liabilities owed by Defendant, claims asserted and judgments entered against Defendant, the property pledged by Defendant as collateral

for the AGF Loan, Defendant's performance of obligations owed to other parties, and Defendant's intent and ability to repay the AGF Loan.

61. Defendant made such materially false and misleading written statements to AGF with the intent to deceive AGF and to induce AGF to extend credit to Defendant through the AGF Loan.

62. At the time Defendant made such materially false and misleading written statements, Defendant had no intention or reasonable expectation of repaying the AGF Loan or otherwise honoring his obligations associated with the AGF Loan.

63. Defendant's acts and omissions resulted in serious and material harm to AGF and AGF has suffered damages in an amount to be proven at trial.

64. AGF is entitled to a judgment against Defendant stating that all amounts owed to AGF by Defendant be excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

65. Based on the fraudulent actions of Defendant, punitive damages are appropriate to the maximum amount allowed under applicable laws.

66. As a result of Defendant's foregoing actions, AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

## THIRD CAUSE OF ACTION

**(Exception to Discharge for Willful and Malicious Injury – 11 U.S.C. § 523(a)(6))**

67. AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

68. Defendant caused willful and malicious injury to AGF by, *inter alia*: (a) making false representations and statements to AGF with the malicious intention of holding AGF responsible for Defendant's debts and (b) obtaining the AGF Loan from AGF by misrepresentation without any intent to honor his obligations thereunder.

69. As a result of Defendant's fraudulent, malicious, or otherwise improper conduct, AGF has suffered damages in an amount to be proven at trial.

70. AGF is entitled to a judgment against Defendant stating that all amounts owed to AGF by Defendant be excepted from discharge under 11 U.S.C. § 523(a)(6).

71. Based on the fraudulent actions of Defendant, punitive damages are appropriate to the maximum amount allowed under applicable laws.

72. As a result of Defendant's foregoing actions, AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest.

## IV. PRAYER FOR RELIEF

WHEREFORE, AGF requests judgment against Defendant as follows:

1. For judgment against Defendant for an amount to be determined at trial, plus accrued and accruing interest;

2. For an order determining and decreeing that all of the claims of AGF against Defendant, and the associated debts with the AGF Loan, are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B) and 11 U.S.C. § 523(a)(6);

3. For AGF's reasonable attorneys' fees incurred herein;

4. For AGF's costs of suit incurred herein;

5. For punitive damages in the maximum amount allowed under applicable laws; and,

6. For such other and further relief as the Court deems just and proper.

DATED this 31st day of March 2023.

**SHEA LARSEN**

/s/ Bart K. Larsen, Esq.
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Creditor Aliya Growth Fund, LLC – Series X*