Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  blarsen@shea.law
          kwyant@shea.law

*Attorneys for Creditor Aliya Growth Fund, LLC –*
*Series X*

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>ROBIN LINUS LEHNER and<br>DONYA TINA LEHNER<br><br>      Debtors. | Chapter 7<br><br>Case No.: 22-14616-nmc<br><br>Adversary Case No.: 23-01073-nmc |
| ALIYA GROWTH FUND, LLC – SERIES X,<br><br>      Plaintiff,<br><br>v.<br><br>ROBIN LINUS LEHNER; DONYA TINA<br>LEHNER; WESTRIDGE PROPERTY<br>MANAGEMENT, LLC; 42055 DAWN<br>ROAD LLC; and ROBERT ATKINSON in<br>his capacity as chapter 7 trustee;<br><br>      Defendants. | **SECOND AMENDED COMPLAINT TO<br>DETERMINE NON-DISCHARGEABILITY<br>OF DEBT PURSUANT TO 11 U.S.C. §§<br>523(a)(2) AND 523(a)(6) AND FOR<br>DECLARATORY RELIEF** |

Plaintiff Aliya Growth Fund, LLC – Series X ("AGF"), by and through its undersigned

counsel, hereby alleges as and for its Second Amended Complaint to Determine Non-

Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6) against Defendant

Page 1 of 38

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Robin Linus Lehner ("R. Lehner") and for Declaratory Relief against Defendant R. Lehner, Defendant Donya Tina Lehner ("D. Lehner"), Defendant Westridge Property Management, LLC ("Westridge"), and Defendant 42055 Dawn Road LLC ("DR" and collectively with Defendants R. Lehner, D. Lehner, and Westridge, "Defendants") as follows:

## I.    JURISDICTION AND VENUE

1.    This is an adversary proceeding brought pursuant to 11 U.S.C. § 523(a)(2) and (6) to determine the nondischargeability of a debt owed by R. Lehner to AGF.  This adversary proceeding is commenced pursuant to Rules 7001(2), (6), and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.    This Court has jurisdiction to hear this adversary proceeding as a core proceeding under 28 U.S.C. §§ 157(b)(2)(I)-(J) and 1334(a)-(b).

3.    This adversary proceeding also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that any Court of the United States "may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief is or could be sought."

4.    On or about December 30, 2022 (the "Petition Date"), Debtors R. Lehner and D. Lehner filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada, initiating Case No. 22-14616-nmc (the "Bankruptcy Case").

5.    This judicial district is the proper venue for this adversary proceeding under 28 U.S.C. § 1409(a), as this adversary proceeding arises under, and is in connection with, the Bankruptcy Case, which is currently pending before this Court in this judicial district.

## II.    THE PARTIES

6.    AGF is a creditor and party-in-interest in the above-captioned Bankruptcy Case and is a limited liability company organized under the laws of the State of Florida with its principal place of business located in the State of Florida.

7.    R. Lehner is, and at all relevant times was, an individual resident of the State of Nevada.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

8.    D. Lehner is, and at all relevant times was, an individual resident of the State of Nevada.

9.    Upon information and belief, Defendant Westridge is, and at all relevant times was, a Delaware Limited Liability Company.

10.    Upon information and belief, R. Lehner is, and at all relevant times was, the manager and sole member of Defendant Westridge.

11.    Upon information and belief, Defendant DR is, and at all relevant times was, a Missouri Limited Liability Company.

12.    Upon information and belief, R. Lehner is, and at all relevant times was, the manager and sole member of Defendant DR.

13.    Robert Atkinson is the chapter 7 trustee in the underlying chapter 7 bankruptcy case of R. Lehner and D. Lehner.

### III.    <u>BACKGROUND OF THE CASE</u>

14.    In or around February 2019, Heritage Bank of the Ozarks ("<u>Heritage</u>") made a loan to Defendant DR in the amount of approximately $580,000.00 (the "<u>Heritage Loan</u>"), which was secured by, among other things, the real property located at 42055 Dawn Road, Plato, Missouri 65552 (the "<u>Dawn Property</u>").

15.    The Dawn Property is, and at all relevant times was, owned by Defendant DR.

16.    The loan documents associated with the Heritage Loan were executed on behalf of Defendant DR by R. Lehner in his capacity as manager and sole member of Defendant DR.

17.    In connection with the Heritage Loan, R. Lehner executed a guaranty by which he personally guaranteed repayment of and Defendant DR's performance under the Heritage Loan.

18.    Beginning in or around August 2020, South River Capital, LLC ("<u>South River</u>") made a series of loans to R. Lehner and to Defendant Westridge (collectively, the "<u>South River Loan</u>"), which were secured by, among other things, the real property located at 9501 Balatta Canyon Ct., Las Vegas, Nevada 89144 (the "<u>Balatta Property</u>").

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

19.   The Balatta Property is, and at all relevant times has been, owned by Defendant Westridge.

20.   To perfect its security interest in the Balatta Property as collateral for the South River Loan, South River caused two or more deeds of trust to be recorded against the Balatta Property in the official records of Clark County, including a deed of trust recorded on or about November 18, 2020 as Book/Instrument No. 202011180001306 and a deed of trust recorded on or about April 8, 2022 as Book/Instrument No. 202204080001327.

21.   The loan documents associated with the South River Loan were executed on behalf of Defendant Westridge by R. Lehner in his capacity as manager and sole member of Defendant Westridge.

22.   In connection with the South River Loan, R. Lehner executed a guaranty by which he personally guaranteed repayment of and Defendant Westridge's performance under the South River Loan.

23.   In or around May 2021, RMSPC Funding, LLC ("RMSPC") made a loan in the amount of approximately $6,844,000 to R. Lehner (the "RMSPC Loan"), which was secured by certain real property and substantially all personal property owned by R. Lehner (the "RMSPC Collateral").

24.   Specifically, the RMSPC Loan was secured by, among other things, a second position lien on the Balatta Property, a second position lien on the Dawn Property, all receivables in and to SolarCode Holdings, LLC, R. Lehner's membership interest in RL Exotics, LLC ("RL Exotics"), and R. Lehner's National Hockey League player contract.

25.   A UCC-1 was filed on behalf of RMSPC evidencing its security interest in the RMSPC Collateral with the office of the Secretary of State for the State of Nevada as evidenced by Filing No. 2021171669-6.

26.   AGF is informed and believes that R. Lehner obtained both the South River Loan and the RMSPC Loan through the services of a third party, Sure Sports, LLC ("Sure Sports"),

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

which holds itself out as a provider of underwriting, banking, and financial services to professional athletes.

27.     AGF is informed and believes that Sure Sports is not a bank or lender but is typically engaged by professional athletes to act as their agent and on their behalf for the purpose of soliciting banks and other lenders to extend financing to such professional athletes in exchange for which the professional athletes pay Sure Sports various underwriting fees, service fees, and other amounts.

28.     AGF is informed and believes that R. Lehner first engaged Sure Sports to provide such financial services in or around 2016 and that R. Lehner thereafter entered into various written agreements with Sure Sports pursuant to which R. Lehner paid Sure Sports substantial underwriting fees, service fees, and other amounts in exchange for Sure Sports soliciting and arranging multiple loans to R. Lehner from various banks and other lenders, including one or more loans made to R. Lehner by Thrivest Specialty Funding, LLC, East West Bank, Centennial Bank, Now Playing, LLC, and Asla Capital, LLC as well as the South River Loan and the RMSPC Loan.

**A.  AGF's Loan to R. Lehner**

29.     AGF is informed and believes that, at some time prior to October 2022, R. Lehner engaged and directed Sure Sports to act as his agent and on his behalf in soliciting a new loan to pay down or refinance the South River Loan, which was then set to mature on January 1, 2023, and the RMSPC Loan, which had matured several months earlier.

30.     On or about October 3, 2022, Sure Sports solicited AGF to make a loan to R. Lehner in the amount of $5 million to pay down the South River Loan and the RMSPC Loan.   In connection with this solicitation, Sure Sports prepared and provided to AGF a document entitled "Robin Lehner Opportunity Analysis" that generally described the proposed terms of the requested loan and the anticipated sources and timing of repayment.

31.     AGF is informed and believes that prior to soliciting AGF to make the loan to R. Lehner, Sure Sports unsuccessfully attempted to solicit several other lenders to make loans to R. Lehner for the purpose of paying down or refinancing the South River Loan and the RMSPC Loan,

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

including, but not limited to, U.S. Bank, N.A., Banc of California, Crosscountry Mortgage, Inc., and Guaranteed Rate, Inc.

32.     This "Robin Lehner Opportunity Analysis" Sure Sports provided to AGF expressly stated that Sure Sports had been retained by R. Lehner "to provide full financial underwriting and aid in obtaining financing."

33.     As a result of this solicitation and subsequent communications between AGF and Sure Sports and R. Lehner, AGF expressed interest in making a secured loan to R. Lehner, subject to the negotiation of mutually acceptable loan terms and the execution of mutually acceptable loan documents.

34.     Sure Sports, acting on behalf of R. Lehner, prepared initial drafts of a promissory note, loan and security agreement, and various other loan documents in early November 2022. Sure Sports circulated those initial draft loan documents for review by AGF and R. Lehner, and their respective legal counsel, on or about November 8, 2022.

35.     Based on AGF and R. Lehner's respective review and comments regarding the draft loan documents prepared and circulated by Sure Sports on November 8, 2022, Sure Sports updated and circulated revised drafts of such loan documents for further review and comment on November 9, 2022 and November 14, 2022.

36.     On November 16, 2022, R. Lehner executed a Promissory Note (the "<u>AGF Note</u>") evidencing a loan to be made by AGF to R. Lehner in the initial principal amount of $4,800,000 (the "<u>AGF Loan</u>") subject to the terms and conditions set forth in the AGF Note.

37.     On November 16, 2022, in connection with and as security for the AGF Loan, R. Lehner executed a Loan and Security Agreement (the "<u>Security Agreement</u>"), two Pledge Agreements, and various other documents associated with the AGF Loan (collectively, and together with the AGF Note, the "<u>AGF Loan Documents</u>") whereby R. Lehner agreed to grant AGF the following liens and security interests as collateral for the AGF Loan: (i) a security interest in substantially all of R. Lehner's existing and after-acquired personal property, including, but not limited to, R. Lehner's accounts, notes, documents, instruments, general intangibles, contracts,

chattel paper, investment property, deposit accounts, which included a first position lien against R. Lehner's current National Hockey League player contract and a second position lien against any future National Hockey League play contract that R. Lehner might execute, (ii) a third position lien against the Balatta Property, (iii) a third position lien against the Dawn Property, (iv) a second position lien against all receivables and rights to payment relating to R. Lehner's membership interest in SolarCode Holdings, LLC ("SolarCode"), and (v) a second position lien against all economic interests and rights to payment relating to R. Lehner's membership interest in RL Exotics.

38.    In connection with his signing of the AGF Loan Documents, R. Lehner personally participated in two online notary sessions on November 16, 2022 during which R. Lehner acknowledged the material terms of the AGF Loan and confirmed that he had reviewed and understood the AGF Loan Documents.

39.    During such notary sessions, R. Lehner stated that he was in Malibu, California and provided his passport as proof of his identity when asked to confirm the same.

40.    During such notary sessions, R. Lehner stated that he was participating in the execution of the AGF Loan Documents "on [his] own free will", that he "read and do[es] understand the contents of the documents [he was] about to sign", and understood that "by signing the documents [he was] legally bound to the terms of the documents."

41.    During such notary sessions, R. Lehner was accompanied by Kyle Ricker, who was a witness to such statements and is believed to be a close friend and business advisor to R. Lehner.

42.    Representatives of Sure Sports, who acted as R. Lehner's agent and on R. Lehner's behalf in soliciting and arranging the AGF Loan, also participated in such notary sessions and were witnesses to such statements by R. Lehner.

43.    Neither R. Lehner nor Ricker nor Sure Sports disclosed to AGF during such notary sessions, or at any time prior thereto, that R. Lehner was receiving treatment for or suffered from any physical or mental condition that might impair R. Lehner's capacity to understand and consent

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

to the AGF Loan Documents and the terms and conditions set forth therein or impair his capacity to accurately and truthfully make the representations and warranties set forth therein.

44.     In connection with the AGF Loan, R. Lehner executed an Affidavit on November 16, 2022 in which he stated, among other things, that he was of "able mind".

45.     In connection with the AGF Loan, R. Lehner also entered into an Underwriting Fee Agreement and separate Fee Agreement with Sure Sports through which R. Lehner agreed to pay certain underwriting fees and other amounts to Sure Sports in consideration of services performed by Sure Sports on R. Lehner's behalf in soliciting and arranging the AGF Loan.

46.     AGF did not enter into any agreement with Sure Sports and did not pay or agree to pay any fee to Sure Sports in connection with the AGF Loan.

47.     Following the execution of the AGF Loan Documents on November 16, 2022 by R. Lehner, AGF accepted and executed the AGF Loan Documents in reliance on the representations and warranties made by R. Lehner therein through his prior review and execution of the AGF Loan Documents.

48.     AGF thereafter funded the AGF Loan via wire transfer on November 21, 2022 according to R. Lehner's disbursement instructions and in further reliance on the representation and warranties made by R. Lehner through his prior review and execution of the AGF Loan Documents.

49.     Concurrent with the funding of the AGF Loan, R. Lehner used $3,794,457 in proceeds of the AGF Loan to pay down the RMSPC Loan and $650,000 in such proceeds to pay down the South River Loan.  R. Lehner also used proceeds of the AGF Loan to pay various underwriting fees and certain other fees and costs owed to Sure Sports relating to the origination of the AGF Loan.  Additional AGF Loan proceeds in the amount of $28,885 were disbursed directly to R. Lehner.

50.     Prior to the funding of the AGF Loan, R. Lehner owed approximately $6,844,000 in connection with the RMSPC Loan and related loan documents.  Following the application of the payment made using proceeds of the AGF Loan, the indebtedness owed by R. Lehner under

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

the RMSPC Loan, and the liens held by RMSPC as collateral for the RMSPC Loan, were reduced to approximately $3,027,826.11.

51.    Prior to the funding of the AGF Loan, Defendant Westridge owed approximately $2,787,000 in connection with the South River Loan and related loan documents, which indebtedness was personally guaranteed by R. Lehner.  Following the application of the payment made using proceeds of the AGF Loan, the indebtedness owed by Defendants under the South River Loan, and the lien held by South River in the Balatta Property as collateral for the South River Loan, were reduced to approximately $2,137,000.

52.    In connection with the paydown of the South River Loan, R. Lehner personally appeared in Clark County, Nevada on November 17, 2022 to execute one or more documents associated with the South River Loan on behalf of Defendant Westridge in his capacity as its manager and sole member.[1]

**B.  R. Lehner's Misrepresentations to AGF through the AGF Note**

53.    To induce AGF to make the AGF Loan, R. Lehner made several materially false and misleading representations to AGF prior to and contemporaneous with his execution of the AGF Note.

54.    As set forth in Section 20 of the AGF Note, R. Lehner represented to AGF prior to and contemporaneously with his execution of the AGF Note on November 16, 2022 as follows:

> Borrower hereby makes the following representations and warranties, before and after giving effect to the transactions contemplated hereby [in the AGF Note]: (i) There is no claim, action, lawsuit, proceeding, arbitration, complaint, charge or investigation pending, or to the Borrower's knowledge, currently threatened against or involving Borrower; (ii) Borrower has no obligations to make payments to any third party pursuant to any instrument, judgment, order, writ, decree, note, or indenture; and (iii) in the event Borrower does have other obligations to make payments to a third party pursuant to any written instrument, Borrower has fully informed Lender of same, in addition to any liens placed on Borrower's property pursuant to such obligations, via the "**Other Current Liabilities / Liens of Borrower**" document attached hereto as **Exhibit C** [to the AGF Note].

---

[1] *See* Claim No. 24-1 at page 8 of 11.

55.     Substantially similar representations and warranties in this regard were also included in the prior drafts of the AGF Loan Documents circulated by Sure Sports for review by R. Lehner and his counsel, including, but not limited to, those drafts circulated on or about November 8, 2022, November 9, 2022, and November 14, 2022.  As such, R. Lehner had reasonable and ample opportunity to review such representations and warranties and to correct or otherwise address any inaccuracies therein prior to his execution of the AGF Loan Documents.

56.     Notwithstanding his prior review of various such drafts of the AGF Loan Documents, R. Lehner did not request any change or clarification to the representations and warranties set forth therein at any time prior to executing the AGF Loan Documents on November 16, 2022 or otherwise communicate to AGF at any time, either directly or indirectly, that such representations and warranties were materially false or otherwise required clarification or revision.

57.     Exhibit C to the AGF Note identified only the South River Loan, the RMSPC Loan, and the Heritage Loan as outstanding liabilities of R. Lehner.  R. Lehner did not disclose any other outstanding indebtedness for which he was personally liable or otherwise obligated to repay or for which he had pledged any of his assets as collateral.

58.     As such, R. Lehner represented both orally through the online notary sessions in which he participated on November 16, 2022 and in writing through his execution of the AGF Note on November 16, 2022 that he had no debts or liabilities and was involved in no litigation or lawsuits except as disclosed on Exhibit C to the AGF Note.

59.     AGF reasonably relied upon R. Lehner's representations and warranties as set forth in the AGF Note and would not have subsequently accepted and executed such AGF Loan Documents or subsequently advanced AGF Loan funds to R. Lehner had it known that such representations and warranties were materially false.

60.     Unbeknownst to AGF and prior to the execution of the AGF Loan Documents by R. Lehner, R. Lehner was indebted to several additional undisclosed creditors, either directly or by personal guarantees of payment, including, but not limited to:

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

a.  Guaranteed financing relating to a promissory note in the amount of $1,000,000 from DMC Financing, LLC to SolarCode;

b.  Guaranteed financing and promissory note in the amount of $700,000 from Jackson Lending, LP to SolarCode;

c.  Debt incurred relating to a promissory note between Anne Meade and SolarCode for $448,000;

d.  Guaranteed financing and promissory note in the amount of $895,000 from Bredan, LLC to SolarCode;

e.  Guaranteed financing and promissory note in the amount of $753,500 from C6 Capital Funding, LLC to SolarCode;

f.  Debt incurred relating to a promissory note with David Schlee for $200,000;

g.  Guaranteed credit facility for Milos Andric, as borrower, and Deutsche Bank Luxembourg S.A., as lender, for $2,800,000;

h.  Debt incurred relating to a promissory note with Digital Asset Redemption, LLC for $100,000;

i.  Debt incurred relating to a promissory note with Dr. Mehmet Erk for $200,000;

j.  Debt incurred relating to a promissory note between Dr. Michael Parentis and SolarCode for $380,000;

k.  Debt incurred relating to a promissory note with Dr. Michael Vasquez for $100,000;

l.  Co-obligor on a promissory note with Eclipse Service, Inc. for $3,915,000;

m.  Debt incurred relating to loan from Frank C. Muggia for $350,000;

n.  Debt incurred relating to Gerald M. Thompson and SolarCode for $300,000;

o.  Debt incurred relating to James Kirchmeyer and RL Solar, LLC for $1,500,000;

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

p.    Debt incurred relating to a promissory note and purchase and sale agreement with JHB Collective, LLC for $887,500;

q.    Debt incurred regarding promissory note with Marc Rosenthal for $475,000;

r.    Debt incurred relating to a promissory note relating to Merle Whitehead and RL Solar, LLC for $1,500,000;

s.    Debt incurred relating to a promissory note with Metro Park for $500,000;

t.    Debt incurred with Miland Holdings, LLC for $27,400;

u.    Debt incurred with Paypal Business Loan c/o Swift Financing, LLC for $24,339;

v.    Debt incurred relating to a promissory note with Richard Hamister for $50,000;

w.    Debt incurred relating to a promissory note with Michael Borden for $526,027;

x.    Debt incurred relating to a loan agreement with Michael Borden for $3,636,093; and

y.    Debt incurred relating to a loan agreement with Peter Eriksson for $787,921.

61.    R. Lehner failed to disclose the foregoing debts and liabilities, which total over $21,000,000 (collectively, the "<u>Undisclosed Debts</u>"), to AGF prior to the execution of the AGF Loan Documents and the funding of the AGF Loan despite confirming and representing multiple times that the information contained in the AGF Note, including R. Lehner's representations and warranties concerning his outstanding liabilities, was true and accurate.

62.    R. Lehner was aware of the foregoing Undisclosed Debts at the time he executed the AGF Note as he had personally signed documents relating to such Undisclosed Debts and had benefited directly or indirectly from funds loaned either to him personally or to his affiliates in connection with such Undisclosed Debts.

63.     R. Lehner knowingly omitted the Undisclosed Debts from the AGF Note with the intent to fraudulently induce AGF to make the AGF Loan to R. Lehner.

64.     Had R. Lehner disclosed the Undisclosed Debts to AGF prior to the execution of the AGF Loan Documents or the funding of the AGF Loan, AGF would not have made the AGF Loan to R. Lehner.

65.     AGF reasonably relied on R. Lehner's representations and warranties concerning his outstanding debts and liabilities as made by R. Lehner through the AGF Note.

66.     AGF was unaware of and had no reasonable way to independently identify the various Undisclosed Debts that R. Lehner failed to disclose through Exhibit C to the AGF Note prior to the execution the AGF Loan Documents or the funding of the AGF Loan.

67.     R. Lehner similarly did not disclose to AGF any pending litigation, judgement, claim, or other proceeding pending against him through Exhibit C to the AGF Note or otherwise.

68.     AGF has since discovered that, as of November 16, 2022, R. Lehner was a defendant or judgment R. Lehner in the following litigation matters, among possible others, all of which were pending at the time R. Lehner executed the AGF Note and other AGF Loan Documents:

      a.     *JHB Collective LLC v. Lehner, Robin*, Florida Palm Beach Court System, Case No. 50-2022-CA-009122;

      b.     *Eclipse Service Inc. v. Solarcode LLC et al.*, U.S. District Court for the Eastern District of Wisconsin, Case No. 2:22-cv-00757;

      c.     *Mats Nilsson et al vs. Ecoboost USA, LLC et al*, Maricopa County Superior Court, Case No. CV2020055511;

      d.     *Taurus, LLC v. Robin Lehner*, Nevada State Court, Case Nos. A-22-857052-C, A-22-857059-C, A-22-857057-C, and A-220-857054-C;

      e.     *Taurus II, LLC v. Robin Lehner*, Nevada State Court, Case Nos. A-22-857063-C and A-22-857061-C;

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

f.    *Commercial Capital BIDCO, Inc. v. Council for the Spanish Speaking, Inc. et al.*, Milwaukee County Courts, Case No. 2022CV0005276;

g.    *Eclipse Service Inc. v. Solarcode, LLC et al.*, Milwaukee County Courts, Case No. 2022CV003016;

h.    *Carey Hedstrom et al. v. Michael Lehner et al.,* Maricopa County Superior Court, Case No. CV2021005251;

i.    *Taurus VII, LLC v. Robin Lehner*, Nevada State Court, Case No. A-22-857065-C;

j.    *Deutsche Bank Luxembourg, S.A. v. Robin Lehner*, Index No. 655899/2021, Supreme Court of New York, Commercial Division; and

k.    A Swedish insolvency proceeding in which default was entered against R. Lehner (case number and name unknown);

69.    R. Lehner failed to disclose the foregoing claims and litigation matters (collectively, the "Undisclosed Claims") to AGF prior to the execution of the AGF Loan Documents and the funding of the AGF Loan despite confirming and representing multiple times that the information contained in the AGF Note, including R. Lehner's representations and warranties relating to claims asserted against him, was true and accurate.

70.    R. Lehner was aware of the foregoing Undisclosed Claims at the time he executed the AGF Loan Documents because, among other things, he had been personally served with various complaints and other documents relating to the Undisclosed Claims and had communicated at various times with the parties asserting such Undisclosed Claims.

71.    R. Lehner has acknowledged that he is subject to the foregoing Undisclosed Claims by way of his Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case.

72.    At Section 13 of the AGF Note, R. Lehner acknowledged that each and every representation, warranty, covenant, and agreement set forth in the AGF Note was fundamental and material and was relied upon by AGF as a material inducement to make the AGF Loan.

73.    R. Lehner knowingly omitted the Undisclosed Claims from the AGF Note with the intent to fraudulently induce AGF to make the AGF Loan to R. Lehner.

74.    Had R. Lehner disclosed the Undisclosed Claims to AGF prior to the execution of the AGF Loan Documents or the funding of the AGF Loan, AGF would not have made the AGF Loan to R. Lehner.

75.    AGF reasonably relied on R. Lehner's representations and warranties concerning the lack of claims or litigation pending against him as made by R. Lehner through the AGF Note.

76.    AGF was unaware of and had no reasonable way to independently identify the various Undisclosed Claims that R. Lehner failed to disclose through Exhibit C to the AGF Note prior to the execution the AGF Loan Documents or the funding of the AGF Loan.

**C.    R. Lehner's Misrepresentations to AGF through the Security Agreement**

77.    In addition to the materially false and misleading statements made by R. Lehner in executing the AGF Note, R. Lehner made several materially false and misleading representations to AGF prior to and contemporaneous with his execution of the Security Agreement.

78.    As set forth in Section IV [Representations and Warranties] (d) of the Security Agreement, R. Lehner represented to AGF as follows:

> There is no pending proceeding, action, litigation, claim, investigation or allegation, including, without limitation, any bankruptcy, insolvency, or similar proceeding, involving Borrower, the Collateral and/or any of Borrower's other assets, and to the best of Borrower's knowledge, no such proceeding, action, litigation, claim, investigation or allegation has been threatened against Borrower or any of the Collateral by any person, entity, or before any court of governmental authority, agency, or arbitration authority.

79.    This representation and warranty was materially false at the time it was made by R. Lehner, who knew this representation and warranty to be materially false because, among other things, he had been personally served with or otherwise received various complaints and other documents relating to the Undisclosed Claims identified above and in R. Lehner's Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case. Such false representation and warranty was knowingly made by R. Lehner with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner and was relied upon by AGF in subsequently making

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

the AGF Loan.

80.    As set forth in Exhibit C to the Security Agreement, R. Lehner agreed to grant AGF a first position lien against R. Lehner's current National Hockey League player contract, among other things, as part of the Collateral for the AGF Loan.

81.    As set forth in Section IV [Representations and Warranties] (e) of the Security Agreement, R. Lehner represented to AGF as follows:

> There is no agreement or other document, or other duties, responsibilities, or obligations, binding on Borrower or that would affect Borrower's rights, assets, or properties (or the Collateral) in a manner that would conflict with or any way prevent the execution, delivery, or carrying out of the terms of this Agreement and the other Loan Documents by Borrower.

82.    This representation and warranty was materially false at the time it was made by R. Lehner, who knew this representation and warranty to be materially false when made because, among other things, he had previously granted RMSPC a first position security interest in his current National Hockey League player contract as part of the collateral for the RMSPC Loan, which was to be only partially repaid through the AGF Loan and would remain outstanding and secured by, among other things, a continuing first position security interest in R. Lehner's current National Hockey League player contract following the funding of the AGF Loan.  Such false representation and warranty was knowingly made by R. Lehner with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner and was relied upon by AGF in subsequently making the AGF Loan.

83.    As set forth in Section IV [Representations and Warranties] (f) of the Security Agreement, R. Lehner represented to AGF as follows:

> Borrower owns all rights, title and interest in and to the Collateral, including, but not limited to, the Player Contract, free and clear of any and all liens, claims, judgments, encumbrances and options (except for the liens and security interests created in favor of Lender under this Agreement and the other Loan Documents), and Borrower is entitled to all of the benefits afforded to it in and to the Player Contracts, including but not limited to any and all payments to be made to Borrower thereunder and Borrower further acknowledges that Borrower is hereby granting a perfected security interest in and to payments to be received by Borrower under the Player Contracts in order to satisfy Borrower's payment of Obligations on the terms as set forth in this Agreement.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

84. This representation and warranty was materially false at the time it was made by R. Lehner, who knew this representation and warranty to be false when made because, among other things, he had previously granted RMSPC a first position security interest in his current National Hockey League player contract as part of the collateral for the RMSPC Loan, which was to be only partially repaid through the AGF Loan and would remain outstanding and secured by, among other things, a continuing first position security interest in R. Lehner's current National Hockey League player contract following the funding of the AGF Loan. Such false representation and warranty was knowingly made by R. Lehner with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner and was relied upon by AGF in subsequently making the AGF Loan.

85. As set forth in Section IV [Representations and Warranties] (g) of the Security Agreement, R. Lehner represented to AGF that "All taxes and assessments of any nature due and payable by Borrower have been paid, and Borrower has filed all tax returns that Borrower is required to file."

86. This representation and warranty was materially false at the time it was made by R. Lehner, who knew this representation and warranty to be false when made because, among other things, he had failed to pay and had received various written notices regarding previously accrued taxes due and owing to (i) the Missouri Department of Revenue as evidenced by Claim 2-1 filed in the Bankruptcy Case, (ii) the New Jersey Division of Taxation as evidenced by Claim 12-1 filed in the Bankruptcy Case, and (iii) the Massachusetts Department of Revenue as evidenced by Claim 23-1 filed in the Bankruptcy Case. Such false representation and warranty was knowingly made by R. Lehner with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner and was relied upon by AGF in subsequently making the AGF Loan.

87. As set forth in Section IV [Representations and Warranties] (n) of the Security Agreement, R. Lehner represented and warranted to AGF that "Borrower is not in default of any material obligation contained in any other instrument or agreement."

88. This representation and warranty was materially false at the time it was made by R. Lehner, who knew this representation and warranty to be false when made because, among other

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

things, R. Lehner was in material default of his obligations under the RMSPC Loan and various other agreements relating to the Undisclosed Claims identified above and in R. Lehner's Statement of Financial Affairs [ECF No. 44] filed in the above-referenced Bankruptcy Case, which he failed to disclose to AGF in requesting and entering into the AGF Loan.  Such false representation and warranty was knowingly made by R. Lehner with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner and was relied upon by AGF in subsequently making the AGF Loan.

89.    As set forth in Section VI [Default] 13 [Material Inducement] of the Security Agreement, R. Lehner acknowledged that AGF relied upon the representations and warranties made by R. Lehner through the Security Agreement and related AGF Loan Documents in entering into and making the AGF Loan to R. Lehner.  Specifically, this section of the Security Agreement states:

> Each representation, warranty, covenant, and agreement by Borrower set forth in this Agreement is fundamental and material to this Agreement, and has been specially negotiated and relied upon by Lender as a material inducement to make the Loan and consummate the other transactions contemplated by this Agreement and the other Loan Documents. All such representations, warranties, covenants, and agreements shall be strictly construed such that anything less than full, complete and strict truthfulness, accuracy, completeness, and compliance therewith shall be considered a material breach, notwithstanding any lack of knowledge, control or culpability on the part of Borrower and without regard to any mitigating factors. Under no circumstances shall Borrower be entitled to receive any notice of, or opportunity to cure, any breach of this Agreement, except as otherwise provided by Lender in Lender's sole discretion, it being understood that the occurrence of such breach shall constitute an immediate Event of Default under this Agreement.

90.    AGF reasonably relied upon each of R. Lehner's representations and warranties as set forth in the Security Agreement and would not have subsequently accepted and executed the AGF Loan Documents or advanced AGF Loan funds to R. Lehner had it known the foregoing representations and warranties as set forth in the Security Agreement were materially false and misleading when made.

91.    Additionally, in the Affidavit executed by R. Lehner on November 16, 2022 in connection with the AGF Loan, R. Lehner stated (i) that he was "fully able and willing to comply with the terms and conditions contained in the Loan and Security Agreement and other Loan Documents", (ii) that he had "not incurred any unsecured debt that has not been made known to"

AGF, and (iii) that he had "not guaranteed, co-signed, or otherwise directly or indirectly assumed or otherwise accepted responsibility for the financial obligations, indebtedness, or liabilities of any third party that has not been made known to" AGF.

92.     Such statements from R. Lehner's November 16, 2022 Affidavit were materially false and misleading when made by R. Lehner, who knew them to be false when made, because, among other things, R. Lehner had not disclosed the Undisclosed Debts or Undisclosed Claims to AGF prior to his execution of this Affidavit and because R. Lehner had no reasonable basis to believe that he could comply with the terms and conditions set forth in the AGF Loan Documents in light of the existence of the Undisclosed Debts and Undisclosed Claims.

93.     Based on R. Lehner's misrepresentations as set forth above and his filing for bankruptcy shortly after entering into the AGF Loan, AGF is informed and believes that R. Lehner never had any intention to perform his obligations under the AGF Loan and intentionally misrepresented his intention to perform such obligations with the fraudulent intent to induce AGF to make the AGF Loan to R. Lehner.

94.     AGF reasonably relied upon R. Lehner's statements as set forth in such Affidavit and would not have subsequently accepted and executed the AGF Loan Documents or advanced AGF Loan funds to R. Lehner had it known that such statements were false.

95.     AGF had no reason to believe that R. Lehner's representations and warranties and other statements as set forth in the AGF Note, Security Agreement, and other AGF Loan Documents were materially false or in any way incomplete or inaccurate at the time AGF accepted and executed the AGF Loan Documents or at the time that AGF funded the AGF Loan.

**D.  R. Lehner's Misrepresentations to AGF Made by R. Lehner's Agent Sure Sports**

96.     Additionally, certain representations made by Sure Sports in acting as R. Lehner's agent and on R. Lehner's behalf in soliciting AGF to make the AGF Loan to R. Lehner were materially false and misleading and were made with the intent to induce AGF to make the AGF Loan to R. Lehner.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

97. Specifically, the "Robin Lehner Opportunity Analysis" sent by Sure Sports to AGF on October 3, 2022 as well as a revised version of the "Robin Lehner Opportunity Analysis" sent by Sure Sports to AGF on October 11, 2022 both stated that the requested loan would be used to "reconsolidate the Borrower's existing debt" and that R. Lehner's "guaranteed NHL contractual income and financial position present a sufficient guarantor to service the loan request."

98. Moreover, the two versions of the "Robin Lehner Opportunity Analysis" prepared and sent to AGF by Sure Sports on Lehner's behalf identified only two other debts that would remain outstanding after funding of the AGF Loan, which were the South River Loan and the RMSPC Loan.

99. The two versions of the "Robin Lehner Opportunity Analysis" prepared and sent to AGF by Sure Sports on Lehner's behalf did not disclose the numerous additional Undisclosed Debts owed by R. Lehner as of October 2022 that together totaled over $21,000,000 or the various Undisclosed Claims then pending against R. Lehner.  The omissions of these matters from the "Robin Lehner Opportunity Analysis" documents were material and resulted in statements set forth therein being materially false and misleading.

100. R. Lehner and Sure Sports knew or should have known that that statements set forth in the "Robin Lehner Opportunity Analysis" concerning R. Lehner's income under his National Hockey League player contract being sufficient to service the AGF Loan were materially false and misleading at the time they were made and that such income would, in fact, be insufficient to service the AGF Loan in light of the numerous Undisclosed Debts then owed by R. Lehner and the various Undisclosed Claims then pending against R. Lehner.

101. AGF is informed and believes that R. Lehner was aware of the contents of the "Robin Lehner Opportunity Analysis" documents prepared by Sure Sports on Lehner's behalf at the time they were provided to AGF and that R. Lehner had authorized and directed Sure Sports to use such "Robin Lehner Opportunity Analysis" documents in soliciting AGF to make the AGF Loan to R. Lehner.

102.    AGF reasonably relied on the information contained in the "Robin Lehner Opportunity Analysis" documents prepared by Sure Sports on Lehner's behalf and would not have made the AGF Loan to R. Lehner had AGF known that such information was materially false or misleading.

103.    In acting as R. Lehner's agent and on R. Lehner's behalf in soliciting AGF to make the AGF Loan to R. Lehner, Sure Sports also provided a Personal Financial Statement dated March 24, 2022 to AGF in or around November 2022 that purported to accurately reflect R. Lehner's financial condition as of March 24, 2022.  In providing such Personal Financial Statement to AGF, Sure Sports represented to AGF that the information contained in such Personal Financial Statement remained substantially accurate as of November 2022.

104.    Although the March 24, 2022 Personal Financial Statement was not signed by R. Lehner, AGF is informed and believes that R. Lehner provided the information used by Sure Sports to prepare the Personal Financial Statement and was aware of the contents of such Personal Financial Statement as of March 24, 2022 and was aware of Sure Sports use of the same in soliciting AGF to make the AGF Loan in November 2022.

105.    AGF is informed and believes that Lehner and Sure Sports provided copies of the March 24, 2022 Personal Financial Statement to other lenders in the course of soliciting financing, including RMSPC.

106.    AGF is informed and believes that R. Lehner had signed earlier versions of the March 24, 2022 Personal Financial Statement that contained substantially similar information concerning R. Lehner's liabilities and assets, including a version dated October 15, 2020 that was not provided to AGF but was provided to other lenders, including RMSPC.

107.    AGF is further informed and believes that R. Lehner authorized and directed Sure Sports to provide the March 24, 2022 Personal Financial Statement to AGF in connection with its efforts to solicit AGF to make the AGF Loan.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

108.    R. Lehner's March 24, 2022 Personal Financial Statement contained several materially false and misleading statements and omissions both at the time of its preparation and when later provided to AGF in or around November 2022.

109.    Among other things, the March 24, 2022 Personal Financial Statement included a purported summary of R. Lehner's liabilities but failed to include the numerous Undisclosed Debts owed by R. Lehner and the various Undisclosed Claims pending against R. Lehner as of March 24, 2022 and as of November 2022.

110.    AGF reasonably relied on the representations set forth in the March 24, 2022 Personal Financial Statement concerning R. Lehner's liabilities in subsequently making the AGF Loan to R. Lehner.

111.    Had the Undisclosed Debts or Undisclosed Claims been disclosed to AGF through the March 24, 2022 Personal Financial Statement or otherwise, AGF would not have made the AGF Loan to R. Lehner.

112.    The March 24, 2022 Personal Financial Statement also included a purported summary of R. Lehner's assets.  Among other things, this summary reflected a receivable owed to R. Lehner by SolarCode in the amount of $15,000,000 (the "SolarCode Receivable") and R. Lehner's 100% membership interest in RL Exotics at a value of $5,000,000.

113.    AGF is informed and believes that, by authorizing and directing Sure Sports to provide the March 24, 2022 Personal Financial Statement to AGF, R. Lehner knowingly overstated both the value of the SolarCode Receivable and the value of R. Lehner's membership interest in RL Exotics, and subsequently offered to grant AGF liens against both the SolarCode Receivable and such membership interest as collateral for the AGF Loan, with the intent to fraudulently induce AGF to make the AGF Loan to R. Lehner.

114.    AGF is informed and believes that R. Lehner knew that there was no reasonable basis to believe or represent the value of the SolarCode Receivable to be $15,000,000 as of either March 24, 2022 or November 2022 as SolarCode had no material income, no material assets, no

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

material business operations, and no realistic or plausible means of ever paying the SolarCode Receivable as of such dates.

115.    AGF is informed and believes that R. Lehner knew that the value of the SolarCode Receivable was significantly less than $15,000,000 as of both March 24, 2022 and November 2022 when he authorized and directed Sure Sports to provide the March 24, 2022 Personal Financial Statement to AGF.

116.    AGF is informed and believes that R. Lehner knew that there was no reasonable basis to believe or represent the value of the R. Lehner's membership interest in RL Exotics to be $5,000,000 as of either March 24, 2022 or November 2022 as RL Exotics owned few, if any, marketable assets and did not generate enough revenue to pay its regular operating expenses as of such dates.

117.    AGF is informed and believes that R. Lehner knew that the value of R. Lehner's membership interest in RL Exotics was significantly less than $5,000,000 as of both March 24, 2022 and November 2022 when he authorized and directed Sure Sports to provide the March 24, 2022 Personal Financial Statement to AGF.

118.    AGF reasonably relied on the representations set forth in the March 24, 2022 Personal Financial Statement concerning the SolarCode Receivable and R. Lehner's membership interest in RL Exotics in making the AGF Loan to R. Lehner and in accepting liens against the SolarCode Receivable and the RL Exotics membership interest as collateral for the AGF Loan.

119.    Had it known that the representations set forth in the March 24, 2022 Personal Financial Statement concerning the SolarCode Receivable and R. Lehner's membership interest in RL Exotics were materially false and misleading, AGF would not have made the AGF Loan to R. Lehner.

120.    The summary of assets set forth in the March 24, 2022 Personal Financial Statement represented the fair market value of the Balatta Property to be $3,818,100 and the indebtedness secured by the Balatta Property to be $2,787,000 – implying the value of Defendant DR's equity in the Balatta Property to be approximately $1,000,000.

121.    The summary of assets set forth in the March 24, 2022 Personal Financial Statement represented the fair market value of the Dawn Property to be $919,500 and the indebtedness secured by the Balatta Property to be $500,000 – implying the value of Defendant DR's equity in the Balatta Property to be approximately $400,000.

122.    Through his bankruptcy schedules filed with the Bankruptcy Court in his chapter 7 case on February 3, 2023 at ECF No. 44, R. Lehner represented the fair market value of the Balatta Property to be approximately $3,250,000 and the fair market value of the Dawn Property to be approximately $800,000 - both substantially less than previously represented to AGF through the March 24, 2022 Personal Financial Statement.

123.    AGF is informed and believes that R. Lehner obtained an appraisal of the Balatta Property dated September 27, 2021 from First American Mortgage Solutions that estimated the fair market value of the Balatta Property to be $3,130,000.

124.    AGF is informed and believes that R. Lehner obtained an appraisal of the Balatta Property dated October 4, 2021 from Benchmark Appraisal Services that estimated the fair market value of the Balatta Property to be $2,900,000.

125.    AGF is informed and believes that R. Lehner obtained an appraisal of the Balatta Property dated July 5, 2022 from Aidan Aron Appraisals that estimated the fair market value of the Balatta Property to be $3,000,000.

126.    AGF is informed and believes that R. Lehner obtained an appraisal of the Balatta Property dated July 7, 2022 from GJS Appraisal Services LLC that estimated the fair market value of the Balatta Property to be $3,535,000.

127.    AGF is informed and believes that R. Lehner knew (i) that there was no reasonable basis to believe or represent the value of the Balatta Property to be $3,818,100 as of either March 24, 2022 or November 2022 and (ii) that the true fair market value of the Balatta Property was $3,250,000 or less as of such dates.

128.    AGF is informed and believes that R. Lehner knew (i) that there was no reasonable basis to believe or represent the value of the Dawn Property to be $919,500 as of either March 24,

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

2022 or November 2022 and (ii) that the true fair market value of the Dawn Property was $800,000 or less as of such dates.

129.    AGF is informed and believes that, by authorizing and directing Sure Sports to provide the March 24, 2022 Personal Financial Statement to AGF, R. Lehner knowingly overstated the fair market values of both the Balatta Property and the Dawn Property, and subsequently offered to grant AGF liens against both the Balatta Property and the Dawn Property as collateral for the AGF Loan, with the intent to fraudulently induce AGF to make the AGF Loan to R. Lehner.

130.    Sure Sports, in acting as R. Lehner's agent in soliciting AGF to make the AGF Loan, inaccurately represented to AGF that it would receive a first position lien on R. Lehner's current National Hockey League player contract as collateral for the AGF Loan.

131.    Sure Sports was aware of the RMSPC Loan and of RMSPC's preexisting first position security interest in R. Lehner's current National Hockey League player contract and of the fact that the RMSPC Loan would be only partially repaid through the AGF Loan. Sure Sports made such inaccurate representation to AGF with the intent to induce AGF to make the AGF Loan to R. Lehner. AGF relied on such misrepresentation by Sure Sports and would not have made the AGF Loan had it known that RMSPC's first position security interest in R. Lehner's current National Hockey League player contract would remain in place and hold priority over AGF's security interest relating to the AGF Loan.

132.    Sure Sports, in acting as R. Lehner's agent in soliciting AGF to make the AGF Loan, further promised to AGF that Sure Sports would cause a UCC-1 financing statement to be filed following the closing of the AGF Loan to perfect AGF's security interest in R. Lehner's current National Hockey League player contract and other personal property pledged as collateral for the AGF Loan. Sure Sports, however, failed to cause a UCC-1 financing statement to be filed following the closing of the AGF Loan and did not attempt to file a UCC-1 financing statement in connection with the AGF Loan until January 4, 2023 – several days after R. Lehner's chapter 7 filing.

133.    AGF did not discovery the materially false and misleading representations set forth in or the omissions from the "Robin Lehner Opportunity Analysis" documents or the March 24, 2022 Personal Financial Statement received from Sure Sports until after Lehner's chapter 7 bankruptcy filing.

**E.  R. Lehner Files for Bankruptcy**

134.    Approximately three weeks after obtaining the AGF Loan and making the foregoing false and fraudulent representations to AGF, R. Lehner engaged bankruptcy counsel and began preparing to file his voluntary chapter 7 bankruptcy petition.

135.    Approximately six weeks after obtaining the AGF Loan and making the foregoing false and fraudulent representations to AGF, R. Lehner filed his voluntary chapter 7 bankruptcy petition on December 30, 2022 thereby initiating the Bankruptcy Case.

136.    As of the filing of the Bankruptcy Case, R. Lehner owed $4,679,259 in principal to AGF, exclusive of interest, costs, fees, and other amounts due in connection with the AGF Loan.

## FIRST CAUSE OF ACTION

**(Exception to Discharge for Imputations of Actual Fraud – 11 U.S.C. § 523(a)(2)(A))**

**(Against Defendant R. Lehner)**

137.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

138.    Under section 523(a)(2)(A), an individual debtor is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or insider's financial condition."

139.    As described in detail above, R. Lehner solicited and received significant sums of money from AGF through the AGF Loan by making materially false and misleading representations regarding outstanding liabilities, outstanding lawsuits and judgments, his assets, his performance of obligations owed to other parties, the collateral for the AGF Loan, and his

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  intent and ability to repay the AGF Loan prior to and contemporaneously with his execution of the

2  AGF Note, Security Agreement, Affidavit, and related AGF Loan Documents.

3      140.    The above representations were materially false and misleading when made by R.

4  Lehner prior to and on November 16, 2022 through his review and execution of the AGF Loan

5  Documents and through prior materially false representations made by R. Lehner through his

6  agent, Sure Sports, in soliciting AGF to make the AGF Loan as described herein.

7      141.    AGF reasonably relied upon such materially false and misleading representations

8  as made by R. Lehner through his review and execution of the AGF Loan Documents and by R.

9  Lehner through his agent, Sure Sports, in soliciting the AGF Loan.  AGF would not have

10  subsequently accepted and executed the AGF Loan Documents or advanced AGF Loan funds to

11  R. Lehner had it known that such representations were false.

12      142.    R. Lehner, through false pretenses and fraud, acted to induce AGF to make the AGF

13  Loan and to advance funds to R. Lehner when he had no intention, ability, or reasonable

14  expectation of repaying the AGF Loan and, in fact, knew that he would be unable to repay the

15  AGF Loan due to the various preexisting Undisclosed Debts and Undisclosed Claims that R.

16  Lehner intentionally concealed from AGF in seeking out the AGF Loan.

17      143.    In the absence of R. Lehner's false pretenses, false representations, and actual

18  fraud, AGF would not have entered into the AGF Loan transaction described above.

19      144.    At the time AGF entered into the above-referenced transactions, AGF did not know

20  that the foregoing representations by R. Lehner were false.

21      145.    AGF's reliance on R. Lehner's false representations was justified and reasonable

22  as AGF had no reason to believe that R. Lehner's representations as set forth in the Exhibit C to

23  the AGF Note, the Security Agreement, or other AGF Loan Documents were materially false or

24  incomplete at the time the AGF Loan was funded.  Similarly, AGF had no reasonable way to

25  independently identify the various Undisclosed Debts and Undisclosed Claims R. Lehner failed to

26  identify in Exhibit C to the AGF Note prior to the funding of the AGF Loan.

27

28

146.    R. Lehner has failed to repay the indebtedness he owed to AGF in accordance with the terms and conditions set forth in the AGF Loan Documents.

147.    AGF has sustained damages as a result of R. Lehner's false pretenses, fraud, and misrepresentations in an amount to be proven at trial.

148.    Based on the fraudulent actions of R. Lehner, punitive damages are appropriate to the maximum amount allowed under applicable laws.

149.    AGF is entitled to a judgment against R. Lehner stating that all amounts owed to AGF by R. Lehner be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

150.    AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

<u>**SECOND CAUSE OF ACTION**</u>

**(Exception to Discharge – 11 U.S.C. § 523(a)(2)(B))**

**(Against Defendant R. Lehner)**

151.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

152.    As described in detail above, R. Lehner solicited and received significant sums of money from AGF through the AGF Loan by making materially false and misleading written statements to AGF through his review and execution of the AGF Loan Documents upon which AGF reasonably relied in subsequently accepting and executing the AGF Loan Documents and in subsequently funding the AGF Loan.

153.    As described in detail above, such materially false and misleading written statements included R. Lehner's omission of the Undisclosed Debts and Undisclosed Claims from the AGF Note and the representations and warranties made through the Security Agreement and other AGF Loan Documents, R. Lehner's false representations regarding contracts with third parties and his performance thereunder, R. Lehner's false representations regarding the personal and real property he pledged as collateral for the AGF Loan and liens held by other creditors, R.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Lehner's false representations regarding his timely payment of taxes and assessments, and R. Lehner's intent and ability to repay the AGF Loan, among other things.

154.   As described in detail above, such materially false and misleading written statements also included R. Lehner's false representations made through his agent, Sure Sports, in soliciting the AGF Loan with respect to R. Lehner's outstanding liabilities and the value of his assets, including the Balatta Property, the Dawn Property, the SolarCode Receivable, his interest in RL Exotics, and other personal property pledged as collateral for the AGF Loan.

155.   R. Lehner made additional materially false and misleading written statements to AGF through the acts of his agent, Sure Sports, in providing the "Robin Lehner Opportunity Analysis" documents and March 24, 2022 Personal Financial Statement, both of which contained materially false and misleading statements as described herein, to AGF in soliciting the AGF Loan and upon which AGF reasonably relied in subsequently making the AGF Loan.

156.   R. Lehner made such materially false and misleading written statements to AGF with the intent to deceive AGF and to induce AGF to extend credit to R. Lehner through the AGF Loan, or, at the very minimum, with reckless disregard as to the truth of those written statements, which he confirmed were accurate prior to and on November 16, 2022 through his review and execution of the AGF Note, Security Agreement, Affidavit, and other AGF Loan Documents.

157.   At the time R. Lehner made such materially false and misleading written statements, R. Lehner had no intention, ability, or reasonable expectation of repaying the AGF Loan or otherwise honoring his obligations associated with the AGF Loan due to, among other things, the Undisclosed Debts and Undisclosed Claims that R. Lehner intentionally omitted from the matters disclosed to AGF through the AGF Loan Documents and through the "Robin Lehner Opportunity Analysis" documents and March 24, 2022 Personal Financial Statement provided to AGF by Sure Sports.

158.   AGF relied on R. Lehner's representations and warranties as set forth in the AGF Note, Security Agreement, Affidavit, and other AGF Loan Documents in subsequently accepting and executing the AGF Loan Documents and in subsequently funding the AGF Loan.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

159.    AGF's reliance on R. Lehner's false representations was justified and reasonable as AGF had no reason to believe that R. Lehner's representations as set forth in the Exhibit C to the AGF Note or other AGF Loan Documents were false or incomplete at the time the AGF Loan was funded.

160.    AGF had no reasonable way to independently identify the various Undisclosed Debts and Undisclosed Claims R. Lehner failed to identify through Exhibit C to the AGF Note prior to the funding of the AGF Loan.

161.    R. Lehner has failed to repay the indebtedness he owed to AGF in accordance with the terms and conditions set forth in the AGF Loan Documents.

162.    R. Lehner's acts and omissions as described herein have caused serious and material harm to AGF, and AGF has suffered damages in an amount to be proven at trial.

163.    AGF is entitled to a judgment against R. Lehner providing that all amounts owed to AGF by R. Lehner be excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

164.    Based on the fraudulent actions of R. Lehner, punitive damages are appropriate to the maximum amount allowed under applicable laws.

165.    AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

### THIRD CAUSE OF ACTION

**(Exception to Discharge for Willful and Malicious Injury – 11 U.S.C. § 523(a)(6))**

**(Against Defendant Lehner)**

166.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

167.    R. Lehner caused willful and malicious injury to AGF by, *inter alia*: (a) making false representations and statements to AGF as described herein with the malicious intention of holding AGF responsible for R. Lehner's debts and (b) obtaining the AGF Loan from AGF by misrepresentation without any intent to honor his obligations thereunder.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

168.    Such statements by R. Lehner were made wrongfully as R. Lehner knew such statements to be untrue when made.

169.    R. Lehner knowingly made the false statements described herein both verbally and in writing prior to signing the AGF Loan and related AGF Loan Documents, which caused significant and intentional injury to AGF.  R. Lehner had no justification or excuse for knowingly making such false statements to AGF in seeking to obtain the AGF Loan.

170.    R. Lehner also acted willfully by making such statements as he knew or should have known that AGF would suffer serious injury as a result of R. Lehner's false and misleading statements and omissions as described herein, which caused R. Lehner to seek out bankruptcy counsel only three weeks after obtaining the AGF Loan and to file his chapter 7 bankruptcy case only six weeks after obtaining the AGF Loan.

171.    R. Lehner's representations were fraudulent and intended to harm AGF by causing AGF to extend $4,800,000 in new financing to R. Lehner that he had no intention, ability, or reasonable expectation of repaying.

172.    As a result of R. Lehner's fraudulent, malicious, or otherwise improper conduct, AGF has suffered damages in an amount to be proven at trial.

173.    AGF is entitled to a judgment against R. Lehner holding that all amounts owed to AGF by R. Lehner be excepted from discharge under 11 U.S.C. § 523(a)(6).

174.    Based on the fraudulent actions of R. Lehner, punitive damages are appropriate to the maximum amount allowed under applicable laws.

175.    AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

### FOURTH CAUSE OF ACTION

**(Declaratory Relief)**

**(Against Defendants R. Lehner and D. Lehner)**

176.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

177.    An actual, ripe, and justiciable controversy exists between AGF and Defendants R. Lehner and D. Lehner concerning the community nature of AGF's claims against R. Lehner and the enforceability of such claims against community property interests held by Defendants R. Lehner and D. Lehner as husband and wife.

178.    Defendants R. Lehner and D. Lehner have been married since July 26, 2014.

179.    Defendants R. Lehner and D. Lehner have maintained their primary residence in Nevada since 2020.

180.    Defendants R. Lehner and D. Lehner were married and residing in Nevada at the time that R. Lehner became indebted to AGF in connection with the AGF Loan through his execution of the AGF Loan Documents and his receipt and acceptance of the proceeds of the AGF Loan.

181.    Nevada is a community property state.

182.    Under Nevada law, all property acquired after marriage by either spouse or both spouses, except through gift, bequest, devise, descent, or an award for personal injury damages, is presumed to be community property.  *See* NRS §§ 123.130 and 123.220.

183.    Under Nevada law, "either spouse, acting alone, may manage and control community property … with the same power of disposition as the acting spouse has over his separate property." *See* NRS § 123.230.

184.    At all relevant times, R. Lehner managed and controlled all community property in which he and D. Lehner held any interest with the same power of disposition as he would have had over his separate property.

185.     In seeking out and accepting the AGF Loan, R. Lehner represented to AGF both directly and through his agent, Sure Sports, that the AGF Loan would be repaid through the use community property, including, but not limited to, R. Lehner's current and any future National Hockey League player contracts, the SolarCode Receivable, R. Lehner's membership interest in RL Exotics, and other personal property.

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

186.    Notwithstanding the foregoing, in filing their bankruptcy schedules in their chapter 7 case, R. Lehner and D. Lehner failed to identify the indebtedness owed to AGF as a community debt but, instead, identified such indebtedness as an obligation of R. Lehner only.

187.    AGF is entitled to declaratory relief determining the indebtedness owed by R. Lehner in connection with the AGF Loan is a community debt that is satisfiable from the community property interests of both R. Lehner and D. Lehner regardless of any discharged granted to D. Lehner in addition to the sole and separate property interests of R. Lehner.

188.    AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

189.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

190.    An actual, ripe, and justiciable controversy exists between AGF and Defendants concerning AGF's rights and entitlement to equitable liens against the Dawn Property and the Balatta Property to secure repayment of the indebtedness owed by Defendant Lehner in connection with the AGF Loan.

191.    Defendant R. Lehner and AGF both intended for AGF to have valid, enforceable, and perfect liens in and against the Dawn Property and the Balatta Property, among other things, as evidenced by the Security Agreement at § III wherein Defendant Lehner agreed to grant AGF a "continuing lien and security interest in all of the Collateral" and represented that such lien and security interest would be valid, enforceable, and perfected.

192.    The Security Agreement defines "Collateral" as, among other things, all "specified collateral described in Exhibit C annexed [to the Security Agreement] and made a part hereof."

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

193. Exhibit C to the Security Agreement provides that AGF was to receive as security for the AGF Loan (i) a third position lien against the Dawn Property and (ii) a third position lien against the Balatta Property, among other things.

194. AGF relied on Defendant R. Lehner's representations and warranties made through his review and execution of the Security Agreement with respect to such Collateral in subsequently accepting and executing the AGF Loan Documents and in subsequently funding the AGF Loan.

195. Defendant R. Lehner is, and at all material times was, the manager and sole member of Defendant Westridge and, as such, had authority to act on behalf of Defendant Westridge, including authority to agree on behalf of Defendant Westridge to grant AGF a security interest in and lien against the Balatta Property as collateral for the AGF Loan.

196. Defendant R. Lehner is, and at all material times was, the manager and sole member of Defendant DR and, as such, had authority to act on behalf of Defendant DR, including authority to agree on behalf of Defendant DR to grant AGF a security interest in and lien against the Dawn Property as collateral for the AGF Loan.

197. Defendant R. Lehner and Defendant Westridge benefited from the funding advanced by AGF under the AGF Loan that was used to pay down the indebtedness owed to South River and RMSPC and reduce their respective liens against the Balatta Property.

198. Defendant R. Lehner and Defendant DR benefited from the funding advanced by AGF under the AGF Loan that was used to pay down the indebtedness owed to RMSPC and reduce its lien against the Dawn Property.

199. Defendant Westridge's ownership interest in the Balatta Property is not property of the bankruptcy estate.

200. Defendant DR's ownership interest in the Dawn Property is not property of the bankruptcy estate.

201. Consistent with the express intentions of AGF and Defendant R. Lehner as set forth in the Security Agreement and other AGF Loan Documents, AGF is entitled declaratory judgment

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

granting it unavoidable equitable liens to secure repayment of the AGF Loan, including (i) an equitable lien against the Dawn Property and (ii) an equitable lien against the Balatta Property.

202.    To the extent the Trustee controls Defendant Westridge or Defendant DR by virtue of his control over property of the bankruptcy estate, AGF is entitled to declaratory judgment determining that the Trustee must use any proceeds received by Defendant Westridge from the sale of the Balatta Property as well as any proceeds received by Defendant DR from the sale of the Dawn Property to satisfy the equitable liens of AGF in their respective order of priority relative to the liens of other creditors prior to the use of such proceeds for any other purpose.

203.    AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

### SIXTH CAUSE OF ACTION

### (Unjust Enrichment)

### (Against Defendants Westridge and DR)

204.    AGF incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

205.    As a result of the funding advanced by AGF under the AGF Loan that was used to pay down the indebtedness owed to South River and RMSPC and reduce their respective liens against the Balatta Property, a benefit was conferred on Defendant Westridge by AGF.

206.    Defendant Westridge appreciated and did indeed utilize the funds conferred by AGF under the AGF Loan to reduce liens against the Balatta Property.

207.    As stated herein, Defendant Westridge accepted and retained the funds conferred by AGF under the AGF Loan.

208.    As a result of the funding advanced by AGF under the AGF Loan that was used to pay down the indebtedness owed to RMSPC and reduce its liens against the Dawn Property, a benefit was conferred on Defendant DR by AGF.

209.    Defendant DR appreciated and did indeed utilize the funds conferred by AGF under the AGF Loan to reduce liens against the Dawn Property.

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

210.   As stated herein, Defendant DR accepted and retained the funds conferred by AGF under the AGF Loan.

211.   It would be inequitable and unjust to allow both Defendant Westridge and Defendant DR to accept the benefits of paying down the respective liens using funds obtained from AGF against the Balatta Property and the Dawn Property without repayment of the same.

212.   AGF has been required to engage the services of an attorney to bring this claim and is entitled to recover its reasonable costs, attorneys' fees, and interest thereon.

## IV.   PRAYER FOR RELIEF

WHEREFORE, AGF requests judgment against Defendants as follows:

1.   For judgment against R. Lehner in an amount to be determined at trial, plus accrued and accruing interest;

2.   For an order determining and decreeing that all of the claims of AGF against R. Lehner, including all indebtedness owed in connection with the AGF Loan, to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B) and 11 U.S.C. § 523(a)(6);

3.   For an order declaring the indebtedness owed by R. Lehner in connection with the AGF Loan to be a community debt that is satisfiable from the community property interests of both R. Lehner and D. Lehner in addition to the sole and separate property interests of R. Lehner;

4.   For an order declaring that AGF is entitled to an equitable lien against the Balatta Property to secure repayment of the AGF Loan;

5.   For an order declaring that AGF is entitled to an equitable lien against the Dawn Property to Secure Repayment of the AGF Loan;

6.   For an order declaring that the Trustee must use any proceeds received by Defendant Westridge from the sale of the Balatta Property as well as any proceeds received by Defendant DR from the sale of the Dawn Property to satisfy the equitable liens of AGF in their respective order of priority relative to the liens of other creditors prior to the use of such proceeds for any other purpose;

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

7.    For judgment against Defendants Westridge and DR in an amount to be determined at trial, plus accrued and accruing interest;

8.    For AGF's reasonable attorneys' fees incurred herein;

9.    For AGF's costs of suit incurred herein;

10.    For an award of punitive damages against R. Lehner in the maximum amount allowed under applicable laws; and,

11.    For such other and further relief as the Court deems just and proper.

DATED this 15th day of August 2023.

**SHEA LARSEN**

*/s/ Bart K. Larsen, Esq.*
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134

*Attorneys for Creditor Aliya Growth Fund,
LLC – Series X*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

**CERTIFICATE OF SERVICE**

On August 15, 2023, I served the foregoing **SECOND AMENDED COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2) AND 523(a)(6) AND FOR DECLARATORY RELIEF** through the above-captioned court's ECF system causing the same to be served on all parties appearing in the above-captioned matter. I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Bart K. Larsen, Esq.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432